**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIG ALLEN ADKINS, | ) | CASE NO. 3:18-cv-00388 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Craig Allen Adkins (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying his applications for a Period of Disability ("POD") and Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et*

*seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the

undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule

72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge

recommends that the Commissioner's final decision be AFFIRMED.

### I. Procedural History

On December 16, 2014, Plaintiff filed his application for POD and DIB, alleging a

disability onset date of June 18, 2014. (Transcript ("Tr.") 204-207). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 117-153). Plaintiff participated in the hearing on November 1, 2016, was represented by counsel, and testified. (Tr. 41-79). A vocational expert ("VE") also participated and testified. *Id*. On February 27, 2017, the ALJ found Plaintiff not disabled. (Tr. 35). On December 28, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 3-7). On February 18, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10, 12 & 13).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to properly consider Listing 1.04, and (2) the RFC failed to account for all of his functional limitations. (R. 10).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On October 20, 2012, an MRI of Plaintiff's lumbosacral spine showed mild facet degenerative changes at L2-3 and facet degenerative changes with mild indentation on the thecal sac and superior disc extrusion at L4-5, and central disc extrusion at L5-S1. (Tr. 419).

On June 24, 2014, Plaintiff was seen by Todd Wiley, M.D., who noted Plaintiff weighed 338 pounds with a BMI of 45.84. (Tr. 357). Plaintiff was in no acute distress, had no edema, and

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. Furthermore, the court omits a recitation of Plaintiff's mental health treatment, because arguments raised in this regard have not been sufficiently developed as explained below.

was diagnosed with hypertension. *Id.*

On July 7, 2014, Plaintiff was seen by James Ingram, M.D., and complained of chronic pain in the lumbar spine that radiates to his legs. (Tr. 335). Plaintiff also reported numbness and weakness in the legs. *Id.* On objective examination, Plaintiff was in no apparent distress, and had trace pedal edema. (Tr. 337).

On January 12, 2015, Dr. Ingram's objective examination of Plaintiff revealed morbid obesity, and 2+ pedal edema. (Tr. 329).

On January 17, 2015, an MRI of Plaintiff's lumbar spine revealed: (1) "[b]road-based midline and paramidline disk herniation at L4-L5, more prominent on the right side, impinging on the right and left L5 nerve roots. Moderate narrowing of the neural foramina bilaterally at L4-L5" and (2) [l]arge right paramidline disk herniation at L5-S1 impinging on the right S1 nerve root. Severe narrowing of the right neural foramen and moderate narrowing of the left neural foramen at L5-S1." (Tr. 578-579).

On February 11, 2015, Plaintiff received epidural steroid injections in his back. (Tr. 511). On the same day, Plaintiff reported his pain as eight of ten, and described his pain as "dull constant achy," that increases from any form of activity. (Tr. 512). He reported his medications are effective. *Id.* Plaintiff had a stable gait. (Tr. 513). His strength was 5/5. (Tr. 514).

On March 30, 2015, Plaintiff again had a stable gait, 5/5 strength, and a positive straight leg raise. (Tr. 860-861). He again received epidural injections. (Tr. 858). Plaintiff indicated his medications help for short periods of time. (Tr. 859).

On April 9, 2015, Plaintiff was seen by Dr. Wiley. (Tr. 761). On physical examination, Plaintiff had no clubbing, no cyanosis, full range of motion in his neck, spine, and extremities, and no edema. (Tr. 761).

3

On June 8, 2015, a scan of Plaintiff's lumbar spine revealed mild dextroscoliosis and disk narrowing at L4-L5 and L5-Sl. (Tr. 576). "The flexion and extension views show limited range of motion suggesting muscle spasm." *Id*.

On June 11, 2015, James Dozier, M.D., wrote a letter to Drs. Wiley and Ailinani regarding a recent neurological evaluation of Plaintiff. (Tr. 583-584). On examination, Plaintiff's cranial nerves were grossly intact, neck was supple, upper and lower extremity strength was grossly normal, sensory examination was grossly intact, but some paraspinal tenderness was present in the lumbar region and over the sacroiliac joint. (Tr. 584). He described the benefit Plaintiff received from facet blocks as "dramatic," and fully supported facet rhizotomy as a treatment consideration. *Id*.

On June 23, 2015, Plaintiff had a negative straight leg raise, stable gait, and 5/5 strength bilaterally in the extremities. (Tr. 848-850).

On August 18, 2015, Plaintiff had mild lumbar tenderness and a stable gait. (Tr. 843-845).

On September 10, 2015, Plaintiff underwent a left radiofrequency ablation of the lumbar medial branch nerve. (Tr. 842).

On October 13, 2015, Plaintiff reported 8/10 pain. (Tr. 935). His gait was stable, his straight leg raise test was negative, his sensation was decreased, and he had 5/5 strength bilaterally in the extremities. (Tr. 937).

On November 23, 2015, Plaintiff had moderate tenderness to palpation over the lumbosacral spine, and "[t]race to 1+ pretibial edema [bilaterally]." (Tr. 919-921). Neurologically, he had no numbness/tingling and no focal weakness. (Tr. 921).

On December 8, 2015, Plaintiff rated his pain 9/10. (Tr. 929). His gait was stable, his straight leg raise test was positive, and his strength was 5/5. (Tr. 930-931).

4

On January 6, 2016, Plaintiff had moderate, bilateral non-pitting edema of the lower extremities. (Tr. 900-901). He had no focal weakness or paresthesias, and he had recently completed six weeks of physical therapy. (Tr. 900-901). Plaintiff was recommended for surgical reevaluation and was trying to decide how to proceed. (Tr. 900).

On February 8, 2016, physical examination of Plaintiff revealed a positive straight leg raise test bilaterally, an antalgic gait, intact sensation in the lower extremities, and no atrophy. (Tr. 1012).

On March 9, 2016, Plaintiff had no clubbing, cyanosis or edema, but moderate to severe tenderness to palpation over the lumbosacral spine. (Tr. 1074).

On July 5, 2016, Plaintiff had no atrophy, limited flexion and extension in the lumbar spine, full range of motion in the lower extremities, 5/5 strength bilaterally in the lower extremities, a positive straight leg raise test, and an antalgic gait. (Tr. 1135). The assessment stated "possible peripheral neuropathy." (Tr. 1136).

On October 11, 2016, treatment notes indicated Plaintiff's lower extremity edema was "[e]ssentially resolved." (Tr. 1121).

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On December 9, 2014, Hary Ailinani, M.D., a pain medicine specialist, completed a checkbox form concerning Plaintiff's physical abilities. (Tr. 415-416). Dr. Ailinani indicated that Plaintiff could occasionally sit, stand and walk; could frequently reach, and could constantly grasp and engage in fine manipulation. (Tr. 415). Dr. Ailinani further indicated that Plaintiff could frequently lift/carry 10 pounds and occasionally lift 100+ pounds. (Tr. 416). In addition, he could frequently climb stairs but only occasionally ladders; he could constantly balance, stoop, see, and hear; he could frequently kneel; and, he could occasionally crouch, crawl, and use foot

5

controls. (Tr. 416). The doctor did not include any diagnoses or explanation supporting the restrictions. (Tr. 415-416).

In a letter dated December 16, 2014, Dr. Ailinani stated that Plaintiff was "currently diagnosed with Lumbar Facet Arthropathy, Lumbar Radiculopathy, Sacroiliitis, Paraspinal Muscle Spasms, Chronic Pain Syndrome, and Depression." (Tr. 417). He noted that a 2012 MRI of the lumbar spine shows facet degeneration at L4-5, superior disc extrusion at L4-5, and a central disc extrusion at L5-S1. *Id*. At that time, Dr. Ailinani felt that Plaintiff was unable to walk, stand, sit, bend, or twist for any prolonged period of time consisting of no more than 30 minutes. (Tr. 417). He opined that Plaintiff would be unable to work until February 6, 2015. *Id*.

On April 9, 2015, State Agency physician Diane Manos, M.D., reviewed the evidence of record and opined that Plaintiff could lift/carry twenty pounds occasionally, ten pounds frequently, stand/walk for four hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Tr. 88-89). She further opined Plaintiff could frequently balance, and occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl. *Id*. She assessed no manipulative, visual, communicative, or environmental limitations. (Tr. 89).

On April 14, 2015, Plaintiff underwent a psychological evaluation with Neil Shamberg, Ph.D. at the request of the State Agency. (Tr. 522). Dr. Shamberg opined that "claimant is of top end average intelligence, hence on a job as he is right now there would not be many limitations with regard to understanding most job instructions[,]" but based on claimant's statements that he has problems with short-term or immediate recall, claimant "could have some short-term recall problems at work, depending in the nature of the job instructions involved." (Tr. 527). Despite his intelligence, Dr. Shamberg indicated that Plaintiff was "very deeply depressed and has a very slow pace of mentation," that, in conjunction with his pain, "would undoubtedly have limitations

6

with regard to maintaining attention and concentration, with regard to keeping

up the pace, and with regard to persisting with some job tasks." *Id*. With respect to limitations in

responding appropriately to supervision and to coworkers in a work setting, Dr. Shamberg

indicated that Plaintiff's long list of phobias, coupled with his major depression, would result in

severe limitations. (Tr. 528). Finally, Dr. Shamberg opined that Plaintiff "would have severe

significant limitations with regard to his ability to respond appropriately to many work

pressures." *Id*.

On April 27, 2015, State Agency psychologist Paul Tangeman, Ph. D., reviewed the

evidence of record and opined that Plaintiff had affective and anxiety-related disorders that

resulted in mild restriction of activities of daily living; moderate difficulties in maintaining social

functioning; moderate difficulties in maintaining concentration, persistence or pace; and, no

repeated episodes of decompensation of extended duration. (Tr. 86). Dr. Tangeman opined that

Plaintiff did not satisfy the "C" criteria of Listings 12.04 and 12.06. *Id*. Further, he opined that

Dr. Shamberg's consultative opinion—that claimant is "severely depressed and would be limited

in work pressures and responding appropriately to supervision and to coworkers in a work

setting"—were "vague and not supported by objective evidence," as the evidence of record did

not demonstrate "difficulties relating to others or any indication of past difficulties with

supervision." (Tr. 88).

In the realm of sustained concentration and persistence, Dr. Tangeman opined Plaintiff was

markedly limited in his ability to carry out detailed instructions and moderately limited in the

following areas: the ability to maintain attention and concentration for extended periods; the

ability to perform activities within a schedule, maintain regular attendance, and be punctual

within customary tolerances; the ability to work in coordination with or in proximity to others

without being distracted by them; and, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 90). Dr. Tangeman explained that "[claimant] presented at CE with slowed pace. He would do best in environments that do not require extended periods of concentration and focus. He would do best performing simple, repetitive work tasks." *Id*.

In the realm of social interaction, Dr. Tangeman opined Plaintiff was moderately limited in the following areas: the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 91). Dr. Tangeman explained that "[claimant] prefers not to be around others. [W]hen he is out in the community, no major problems are noted. He would do best in environments where there is not over the shoulder supervision and where interactions with coworkers and supervisors is superficial in nature." *Id*. Finally, Dr. Tangeman opined that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting, explaining that "[c]hanges may be perceived as stressful. He would do best with occasional changes in work tasks, that are easily learned." *Id*.

On June 25, 2015, chiropractor William Lorenz, D.C., completed a form indicating he last saw Plaintiff on December 30, 2014. (Tr. 507). He indicated Plaintiff had severe low back and leg pain due to herniated discs. *Id*. He further noted Plaintiff had weak hamstrings and psoas muscles bilaterally, and muscle spasms in the lumbar region. *Id*. Plaintiff was able to perform both gross and fine manipulation. *Id*. Plaintiff did not use an ambulatory aid, but had a slow and cautious gate. *Id*. He opined that Plaintiff's "lower extremities should be limited for anything

requiring strength." *Id.*

On October 8, 2015, State Agency physician Gerald Klyop, M.D., reviewed the evidence of record and assessed physical functional limitations mirroring those assessed by Dr. Manos above. (Tr. 107-109).

On October 13, 2015, State Agency psychologist Todd Finnerty, Psy. D., reviewed the evidence of record and reiterated Dr. Tangeman's findings that Plaintiff did not meet the Listing criteria for affective or anxiety-related disorders. (Tr. 105). Dr. Finnerty also completed an RFC largely mirroring that of Dr. Tangeman above, except that Dr. Finnerty assessed no marked limitations. (Tr. 109-110).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c)

and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since June 18, 2014, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease with radiculopathy; left ventricle hypertrophy; obesity; sleep apnea; anxiety; and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). He can occasionally climb ramps and stairs, never climb ladders ropes or scaffolds, and can occasionally

10

balance, stoop, but never kneel, crouch, and crawl. He is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work. He is limited to making simple work-related decisions. He is limited to responding appropriately to occasional interaction with supervisors, coworkers, and the general public. Finally, he is limited to tolerating few changes in the work setting, defined as routine job duties performed in a stable, predictable work setting. Any necessary changes need to occur very infrequently, if at all, and be adequately and easily explained. He is to have a sit/stand option of: each 60 minutes the allowance to change position at the workstation for two minutes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on ***, 1969 and was 44 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 18, 2014, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 18-35).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is

supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. Listing 1.04**

In his first assignment of error, Plaintiff argues the ALJ did not conduct a proper analysis with respect to Listing 1.04 for disorders of the spine. (R. 10, PageID# 1193-1197).

At the third step in the disability evaluation process, a claimant is considered disabled if his "impairment(s) meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement." *See* 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments sets forth those impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work

experience." 20 C.F.R. §§ 404.1525(a). Therefore, an individual who meets the requirements of a Listed Impairment in conjunction with the durational requirement is deemed conclusively disabled.

Each individual listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). It is Plaintiff's burden to "show that his condition meets or equals one of the listed impairments." *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). A claimant must satisfy *all* of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (*citing* 20 C.F.R. § 404.1525(c)(3)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant is also disabled if his impairment is the medical equivalent of a listing, 20 C.F.R. § 404.1525(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

The ALJ should discuss a relevant listing "where the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x 426, 432 (6th Cir. 2014) (*citing Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). Although an ALJ errs when no reasons are provided to support a finding that a specific listing was not met where the claimant had put forward sufficient evidence to meet the listing, *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414-15 (6th Cir. 2011), such error is subject to harmless error analysis where the claimant "has not shown that his impairments met or medically equaled in severity any listed impairment." *Forrest v. Comm'r of Soc. Sec.*, 591 Fed. App'x 359, 366 (6th Cir. 2014).

Though conceding the ALJ mentions Listing 1.04, Plaintiff, nonetheless, argues that "the

13

ALJ offered "no analysis" with respect to said listing. (R. 10, PageID# 1195-1196). The relevant

Listing's requirements are as follows:[2]

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc diseases, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing § 1.04(A).

The general provisions of the listings associated with the musculoskeletal system sets forth

guidelines for examination of a claimant's spine and states in relevant part:

> Observations of the individual during the examination should be reported; e.g., how he or she gets on and off the examination table. **Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss.** However, a report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thigh and lower legs, or both upper and lower arms, as appropriate, at a stated point above and below the knee or elbow given in inches or centimeters. Additionally, a report of atrophy should be accompanied by measurement of the strength of the muscle(s) in question generally based on a grading system of 0 to 5, with 0 being complete loss of strength and 5 being maximum strength.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing § 1.00(E)(1) (emphasis added).

The ALJ addressed the disputed listing as follows:

> The undersigned examined and considered all listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, with specific attention to Listings 1.04 (Disorders of the spine), 3.02 (Chronic Respiratory Disorders), 4.04 (Ischemic heart disease) and those found in section 12.00 (Mental Disorders). Obesity and its effects were also considered when evaluating disability, as the combined effects of obesity can increase the effects of other impairments (Social Security Ruling 02-1p).

---

[2] Plaintiff asserts error solely with respect to subpart A of Listing 1.04. (R. 10. PageID# 1193).

> However, the undersigned concludes the medical evidence did not demonstrate the claimant's impairments rose to the level of listing level severity, and that **no acceptable medical source had mentioned findings equivalent in severity to the criteria of any listed impairmen**t, individually or in combination.
>
> In particular**, the evidence of record does not demonstrate the claimant has lost the ability to effectively ambulate or perform fine and gross movements to meet the criteria of Listing 1.04** (Exhibits 7F/6, 13F/ 10-15, 26, 16F/4, 10, 17F/144 and 19F/33).

(Tr. 19) (emphasis added).

The ALJ's discussion of Listing 1.04, albeit brief, implicitly makes clear that the requisite motor loss was lacking by Plaintiff's continued "ability to effectively ambulate" and "perform fine and gross movements." (Tr. 19). As state above, a claimant must satisfy *all* of the criteria to meet a listing. *Rabbers*, 582 F.3d at 652. The ALJ's decision streamlined the analysis by finding one of the criteria was not satisfied. The Commissioner's brief cites numerous portions of the record demonstrating the lack of clinical findings to support motor loss, pointing to a lack of neurological weakness, 5/5 strength in the extremities, lack of atrophy, and a lack of focal strength weakness. (R. 12, PageID# 1222). Plaintiff objects, arguing the Commissioner's argument is based on impermissible post hoc rationalization. (R. 13, PageID# 1232). The Court disagrees. The ALJ's decision explicitly references many of these same medical records, and the decision must be taken as a whole. For example, the ALJ noted Plaintiff had "normal strength in the lower extremities upon examination," and cites several medical records that document "atrophy – none." (Tr. 26, *citing* Exh. 17/F at 69 [Tr. 1012], 144 [Tr. 1087]; Exh.19F at 32 [Tr. 1135]). A decision from the Southern District of Ohio addressing a similar argument concerning Listing 1.04A found no error where there was insufficient evidence of "motor loss" where multiple records consistently demonstrated full muscle strength and sensation. *See Brauninger v. Comm'r of Soc. Sec.*, No. 1:16-cv-926, 2017 WL 5020137, at *7 (S.D. Ohio Nov. 3, 2017),

*report and recommendation adopted*, 2018 WL 1420573 (S.D. Ohio Mar. 22, 2018) ("Courts have noted that the type of 'motor loss' required by Listing 1.04A is not the same as mere muscle weakness."); *see also Miller v. Comm'r of Soc. Sec.*, 848 F.Supp.2d 694, 709 (E.D. Mich. Oct. 21, 2011) (observing that a plaintiff failed to meet her burden of proof by merely showing "muscle weakness" where the listing required "'motor loss,' demonstrated by atrophy associated with muscle weakness …") (citations omitted).

Thus, the court finds the first assignment of error lacking in merit. Even if the ALJ's explanation could have been more thorough, the Sixth Circuit has held that a matter should not be remanded where the plaintiff cannot establish that "a ruling was anything but harmless error," noting the futility of "sending the case back to the ALJ" where it would not "serve any useful purpose …." *Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'") (*quoting NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (same). "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989); *accord Mabrey v. Comm'r of Soc. Sec.*, 1:13-cv-555, 2015 WL 556435 at *5 (S.D. Ohio Feb. 10, 2015), *adopted by* 2015 WL 1412205 (Mar. 26, 2015).

**2. RFC Determination**

In the second assignment of error, Plaintiff asserts the RFC "cannot be sustained because it is founded on both legal and factual errors." (R. 10, PageID# 1197-1208).

The RFC is an indication of an individual's work related abilities *despite* their limitations.

*See* 20 C.F.R. §§ 404.1545(a).[3]  The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). The concomitant hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)).

However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th

---

[3] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, *the claimant's RFC*, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

Cir. 1993)); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6ᵗʰ Cir. 1994)),

*adopted by* 2011 WL 441518 (Feb. 4, 2011); *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260,

2011 WL 400101 (N.D. Ohio Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc.

Sec.*, 372 Fed. App'x 582 (6ᵗʰ Cir. 2010) (same).

Herein, the RFC is supported by the opinions of the various State Agency physicians and

psychologists. First, the ALJ found Plaintiff was capable of sedentary work. "Sedentary work

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like

docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves

sitting, a certain amount of walking and standing is often necessary in carrying out job duties.

Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria

are met." 20 C.F.R. § 404.1567(a). Both Drs. Manos and Klyop opined that Plaintiff could

perform light exertional work—lift 20 pounds occasionally and ten pounds frequently and

stand/walk for four hours, and sit for six hours in an eight-hour workday. (Tr. 88-89, 107-109).

Although the ALJ ascribed only partial weight to these opinions and found that claimant should

be limited to the more restrictive sedentary exertional level, the above opinions certainly support

a finding that the claimant could perform the lesser exertional requirements of sedentary work.

20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do

sedentary work, unless there are additional limiting factors such as loss of fine dexterity[4] or

inability to sit for long periods of time.")

With respect to non-exertional mental limitations, the ALJ restricted Plaintiff to the

---

[4]  Neither State Agency physicians assessed any manipulative restrictions. (Tr. 89, 108).
Plaintiff's chiropractor also assessed no limitations with respect to gross or fine manipulation.
(Tr. 507).

following: simple, routine and repetitive tasks (but no production rate or assembly line work); jobs involving only simple work related decisions; only occasional interactions with co-workers, supervisors, or the general public; and jobs involving only few or infrequent work changes where such changes are easily explainable. (Tr. 22). The ALJ accorded great weight to the opinions of State Agency psychologists Tangeman and Finnerty. (Tr. 33). Plaintiff fails to point out any material discrepancy between the RFC and the psychologists' opinions, and the court does not perceive any major inconsistency.

State agency consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept.8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.")

Thus, the RFC determination was supported by substantial evidence of record. Plaintiff's second assignment of error fails to establish that the RFC determination—a determination that is

properly reserved to the ALJ—was unsupportable merely by pointing to contrary evidence or taking issue with the ALJ's discussion of the evidence of record. Plaintiff references, without any meaningful development, multiple alleged shortcomings or failures in the ALJ's decision. But it is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See. e.g., Kennedy v. Commissioner*, No. 03-1276, 2003 WL 23140056, at *1 (6th Cir. Dec. 12, 2003) (*citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050 (1998) (same); *McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (court under no obligation to scour record for errors not identified by claimant). The *McPherson* court aptly stated: "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson*, 125 F.3d at 995-996 (internal citations omitted); *accord Paul v. Detroit Edison Co.*, 642 Fed. App'x 588, 592 (6th Cir. 2016); *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15-cv-666, 2017 U.S. Dist. LEXIS 188005, *8 (N.D. Ohio, Nov. 14, 2017) (declining to "add flesh to the bones of a party's skeletal … argument") (Carr. J.).[5]

---

[5] Although Plaintiff generally complains that the ALJ rejected the opinion of a treating source with respect to a stand/walk option, Plaintiff does not argue that the ALJ's decision violated the treating physician rule or failed to give good reasons for rejecting said opinion. (R. 10, PageID# 1198). Similarly, Plaintiff takes issue with the ALJ not adopting a portion of the State Agency physicians' opinions, but does not argue that the ALJ's explanation for doing so violated any rule or regulation. *Id*. Rather, Plaintiff merely asserts that an MRI from January of 2015 could be perceived as supporting these restrictions. However, it is not this court's function to reweigh the evidence of record. Finally, Plaintiff points out that the ALJ rejected certain mental functional limitations assessed by Dr. Shamberg, a consultative examiner, but again identifies no analytical deficiency in the ALJ's discussion of the opinion. (R. 10, PageID# 1202-1204). Again, Plaintiff merely posits that there is evidence of record, that if construed differently, could have supported the limitations assessed by the consultative examiner. *Id*.

Although the court deems Plaintiff's undeveloped, fragmental arguments waived, Plaintiff has presented a developed basis for the court to consider his argument regarding Global Assessment of Functioning ("GAF") scores. (R. 10, PageID# 1198-1200). Plaintiff generally asserts that the ALJ improperly ignored lower GAF scores in the record, most of which were scores in the forties.[6] The ALJ addressed Plaintiff's mental health treatment and GAF scores as follows:

> The claimant himself reported of experiencing only intermittent, moderate depression and anxiety at the beginning of July 2014 (Exhibit 3F/8). He also admitted to improvement of his symptoms without adverse effects with regard to his prior treatment and medications when he began treatment at the VA in January 2016 (Exhibits 15F/17-31 and 17F/78-92). After establishing treatment at the VA, mental health records consistently provided the claimant's mood was euthymic with a full affect, fluid speech, appropriate behavior, good insight, a logical thought process, good attention and he had no limitations with his memory (Exhibits 17F/32-34, 37-38, 62-65, 106-108, 112, 137-140, 18F/7-8 and 19F/21-23, 29). Thus, the objective evidence does not support Mr. Center's opinions and they are accorded little weight.

> Likewise, little weight is accorded to the global assessment of functioning (GAF) scores of 49 and 51 provided by Mr. Center and in the claimant's Northeastern Center treatment records, which are scores on the "cusp" between what would be considered a rather serious symptomology (according to the DSM-IV) and that of a merely moderate degree (Exhibits 4F/3, 15, 23, 28-32, 56, 5F/15, 23, 28-34, 56 and 9F/2, 7-19). That is, the GAF scores straddle a fine line between what is generally taken to be sufficient functionality for purposes of gainful employment and what could, presumably, be understood as insufficient functionality.

---

[6] The GAF scale reports a clinician's assessment of an individual's overall level of functioning at a particular moment. An individual's GAF is rated between 0-100, with lower numbers indicative of more severe mental impairments. An individual with a score of 51-60 is classified as having "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning." *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) (DSM-IV). A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) (DSM-IV).

> As previously mentioned, although the claimant's longitudinal mental health history indicates the claimant had mild to moderate depression and anxiety intermittently due to significant situational stressors, they consistently displayed his speech was normal, his thought process logical and/or coherent, and his thought content had no alterations (Exhibits 4F/ 19-20, 5F/ 19-20, 9F/10-1l, 17F/32-34, 37-38, 62-65, 106-108, 112, 137-140, 18F/7-8 and 19F/21-23, 29). Consequently, the above objective evidence does not support the serious symptomology suggested by the above GAF scores. The Commissioner has also declined to endorse the GAF scale for "use in Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements [of the] mental disorders listings," which renders the scores unpersuasive as well (65 Fed. Reg. 50746, 50764-65 (2000)).

(Tr. 31).

In the Sixth Circuit, courts have recognized that "GAF scores are 'not raw medical data,' and 'the Commissioner has declined to endorse the [GAF] score for use in' Social Security benefits programs." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835-36 (6th Cir. 2016) (noting that although a GAF score is "not essential to the RFC's accuracy," it may aid in formulating the RFC) (internal citations omitted).

> We take a case-by-case approach to the value of GAF scores. Previously, we have refused to find that a low GAF score established that the ALJ's decision was not supported by substantial evidence where the ALJ had reason to doubt the credibility of the assigning source; the claimant had conflicting GAF scores; the GAF scores were not accompanied by a suggestion that the claimant could not perform any work; substantial evidence supported the conclusion that the claimant was not disabled; and the VE testified that an individual with the claimant's limitations could still perform a number of jobs.

*Miller*, 811 F.3d at 836 (internal citations omitted); *accord Harbolt v. Comm'r of Soc. Sec.*, No. 5:17cv1011, 2018 WL 3323173, *2 (N.D. Ohio Jul. 6, 2018) ("Contrary to the rule espoused in *Miller*," the plaintiff sought to have the court find that consistently low GAF scores "mandate a finding in her favor," but that *Miller* does not compel such a result and GAF scores may be treated as "any other evidence in the record.") (Adams, J.) In addition, the court notes that an update of the DSM in 2013 eliminated the GAF scale because of "its conceptual lack of clarity ...

and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

To the extent Plaintiff contends that the ALJ ignored those portions of the record that contained lower GAF scores than 49, the record is to the contrary. Although the ALJ's decision did not explicitly reference the lower GAF scores, the ALJ states that she has "considered the numerous similar opinions of Steve Center, the claimant's mental health nurse at Northeastern Center (Exhibits 4F/3-5, 15-17, 23-25, 34-36, 41-46, 49-51 and 5F/3-5, 15-18, 23-25, 34-36, 41-46, 49-51)." (Tr. 30). The ALJ's citations include the same pages cited in Plaintiff's brief containing the additional GAF scores. (R. 10, PageID# 1199 *citing* Tr. 359, 371, 379, 390, 400, 405, 427, 439, 447, 458, 465, 468, 473). Thus, Plaintiff's argument that the ALJ ignored the opinions is not well-taken.[7]

In addition, Plaintiff characterizes the ALJ's analysis as cherry-picking when discussing the GAF scores. (R. 10, PageID# 1198). The Sixth Circuit has found that a claimant's allegation of cherry-picking evidence by the ALJ unavailing on appeal, agreeing with the court below that such an "allegation is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described

---

[7] To the extent these GAF scores were assessed by a nurse or nurse practitioner, such opinions do no constitute "medical opinions" as defined by the regulations, which restrict "medical opinions [to] statements from acceptable medical sources …." 20 C.F.R. § 404.1527(a)(1). Further, these records all contain three GAF numbers, and Plaintiff references only two of them. (R. 10, PageID# 1199 at n. 18). The bulk of the records assess a "Current" GAF score of 40, a "Past Year" GAF score of 49, and a "Baseline" GAF score of 45, while other records assess scores of 45-49-45 respectively. (Tr. 359, 371, 379, 390, 400, 405, 427, 439, 447, 458, 465, 468, 473).

23

more neutrally as weighing the evidence.")); *accord Hammett v. Comm'r of Soc. Sec.*, No. 16-12304, 2017 WL 4003438, at *3 (E.D. Mich. Sept. 12, 2017); *Cromer v. Berryhill*, No. CV 16-180-DLB, 2017 WL 1706418, at *8 (E.D. Ky. May 2, 2017); *Anderson v. Berryhill*, No. 1:16CV01086, 2017 WL 1326437, at *13 (N.D. Ohio Mar. 2, 2017), *report and recommendation adopted*, 2017 WL 1304485 (N.D. Ohio Apr. 3, 2017). Further, it is also well established that "[n]either the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 Fed. App'x 195, 199 (6th Cir. 2010) (*citing Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 507-508 (6th Cir. 2006) (*per curiam*)). Plaintiff has not demonstrated that the ALJ's conclusion or analysis was unreasonable.

Finally, even if the court concluded the ALJ erred by not explicitly mentioning the lower GAF scores, which the court does not find, a remand would not be required. As found above, the State Agency psychologist opinions constituted substantial evidence that Plaintiff retained the mental functionality determined by the RFC.   As explained by a recent decision from this district, "if there is substantial evidence that [a claimant] is not disabled, such as there is with [a medical source] functional opinion and those of the state agency consultants, the reviewing court 'may not disturb the denial of benefits' to a claimant whose GAF score is as low as 40-45." *Owens v. Comm'r of Soc. Sec.*, No. 1:16 CV 1220, 2017 WL 3037503, at *11 (N.D. Ohio June 30, 2017) (Baughman, M.J.), *report and recommendation adopted*, 2017 WL 3034316 (N.D. Ohio July 17, 2017) (Gwin, J.)

Because the ALJ's RFC is supported by substantial evidence, a remand is not warranted. Plaintiff's complaints regarding how the ALJ addressed the evidence of record do not provide a basis for a remand. The second assignment of error is not well taken.

24

## IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: January 16, 2019

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.   *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).